[No. 23216–9–I. Division One. December 27, 1989.]

LOCKHEED SHIPBUILDING COMPANY, *Appellant,* v. THE
DEPARTMENT OF LABOR AND INDUSTRIES,
*Respondent.*

*William T. Grimm* and *Davis, Grimm & Payne,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Byron L. Brown, Assistant,* for respondent.

PEKELIS, J.—Lockheed Shipbuilding Company (Lockheed) appeals the trial court's order affirming the decision of the Director of the Department of Labor and Industries (DLI). Lockheed contends that the DLI erred in concluding that the applicable prevailing wage rate for welding work performed by Lockheed was the pipefitter construction rate rather than the boilermaker shipyard rate. We affirm.

I

The facts are not in dispute.[1] In November of 1985, Kiewit–Global (Kiewit) contracted with Municipality of Metropolitan Seattle (METRO) to construct outfall pipelines at Duwamish Head in West Seattle as part of the Renton Effluent Transfer System (Duwamish project). METRO's specifications required that the pipeline be constructed of pipes at least 120 feet in length. Space to

---

[1] Neither party assigns error to the Director's adoption of the Administrative Law Judge's findings of fact.

fabricate pipe of this length was not available on the construction site.

Kiewit advertised for bids for pipe fabrication to be performed "off-site" and specified that the work would involve joining 60-foot pipestems manufactured in Japan into 540-foot lengths. Several shipyards submitted bids. Kiewit chose Lockheed as the successful bidder.

Lockheed's contract with Kiewit to perform the welding work required that Lockheed pay its welders the "prevailing rate of wage." Lockheed consulted with the industrial statistician at the DLI about the wage rate it intended to pay its welders. The statistician agreed with Lockheed that the prevailing rate for pipe fabrication work performed at a shipyard would be the rate applicable to boilermaker welders. Thereafter, Lockheed fit the pipe in its shipyard in Everett, using its boilermaker welders to join the pipestems.

In January of 1986, United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, Local Union 32 (Local 32) requested that the DLI review its wage determination on the Lockheed contract. After a series of discussions with representatives of Lockheed, METRO, Kiewit, and the unions, the assistant director of the DLI determined that the correct prevailing wage rate was the rate applicable to plumbers and pipefitters engaged in construction work rather than that of boilermaker welders engaged in shipyard work. The former rate is higher.

Lockheed protested the assistant director's decision and the matter was arbitrated before a DLI Administrative Law Judge. The Judge found that in Washington "the majority . . . of metal pipe for pipelines carring [sic] sewage, water, oil and gas have [sic] been done by pipefitter welders" in the construction industry. The Judge cited a recent project in Everett in which welders joining pipestems into 80-foot lengths for shipment to Alaska were paid wages at the pipefitter construction rate.

Despite these findings, the Judge ruled in favor of Lockheed. The Judge reasoned that the nature of the Duwamish project was unique in that the welding of the pipestems into 540–foot lengths could only be done at shipyards where the pipestems could then be transported by water to the construction site. The Judge concluded that because the work could only be performed at shipyards, the prevailing wage rate for boilermaker welders was the applicable rate.

On administrative appeal, the Director adopted the Judge's findings of fact, but rejected the Judge's conclusion that the project was unique. The Director concluded that because the "work performed in the Lockheed Shipyard by Lockheed employees for the METRO public works project was of the same type and of a similar nature as work done by pipefitters in the construction industry in the fabrication of pipe for carrying sewage, water, oil, and gas", the applicable rate was the pipefitter construction rate, not the boilermaker shipyard rate.

Lockheed then appealed to the Superior Court which affirmed the DLI's decision.

## II

Local 32 first contends that this court lacks statutory jurisdiction under the administrative procedure act (APA) to review the DLI's decision.[2] Local 32 argues that RCW 39.12.060 precludes judicial review under the APA because it provides for "final and conclusive" arbitration of disputes about the prevailing wage.

RCW 39.12.060 provides:

[I]n case any dispute arises as to what are the prevailing rates of wages for work of a similar nature and such dispute cannot be adjusted by the parties in interest, including labor and management representatives, the matter shall be referred for arbitration to the director of the department of labor and industries of the state and his or her *decision therein shall be*

---

[2]Local 32 failed to raise this issue below. However, a party may raise the issue of whether the trial court lacked jurisdiction for the first time on appeal. RAP 2.5(a)(1).

*final and conclusive and binding on all parties involved in the dispute.*

(Italics ours.)

Local 32 contends that RCW 39.12.060 clearly precludes judicial review of the DLI's decision after arbitration. In support of its contention, Local 32 cites *Southeastern Wash. Bldg. & Constr. Trades Coun. v. Department of Labor & Indus.*, 91 Wn.2d 41, 47, 586 P.2d 486 (1978), in which the court held that arbitration was the "only form of 'appeal' provided in the statute".

*Building Trades* is distinguishable, however. There, the appellants sought judicial review of the industrial *statistician's* determination of the prevailing wage. The employer had failed to follow the administrative procedure for contesting the statistician's decision through DLI arbitration. In declining jurisdiction of the appellants' appeal, the court merely adhered to the well–established rule that parties must exhaust their administrative remedies before seeking judicial review. *South Hollywood Hills Citizens Ass'n for Preserv. of Neighborhood Safety & Env't v. King Cy.*, 101 Wn.2d 68, 73, 677 P.2d 114 (1984); *accord, Dils v. Department of Labor & Indus.*, 51 Wn. App. 216, 219, 752 P.2d 1357 (1988). Therefore, the *Building Trades* court did not decide the question presented here: whether a party is entitled to judicial review of the Director's decision *after* arbitration.

No Washington case has decided whether courts have jurisdiction to review the Director's decision after arbitration,[3] and there is no statutory provision which specifically prohibits judicial review of arbitration decisions under RCW 39.12.060. However, RCW 39.12.060 clearly

---

[3]Lockheed contends that this issue was implicitly decided in *Everett Concrete Prods., Inc. v. Department of Labor & Indus.*, 109 Wn.2d 819, 748 P.2d 1112 (1988). There, the Supreme Court considered whether the DLI correctly interpreted RCW 39.12 in determining the prevailing wage applied to off–site manufacturers who make products for public works projects. However, neither party raised the jurisdictional issue, and the court did not specifically decide whether RCW 39.12.060 precludes judicial review of the DLI's decision after arbitration.

provides that all arbitration decisions are to be "final and conclusive". By characterizing the Director's decision after arbitration as "final and conclusive", the Legislature has demonstrated its intent to limit judicial review of the Director's decision after arbitration.

In addition, the legislative history of RCW 39.12.060 reveals that the Legislature deleted provisions for a civil action for failure to pay the prevailing wage and inserted the language requiring arbitration. *See* House Journal, 29th Legislature (1945), at 488; Senate Journal, 29th Legislature (1945), at 439; Laws of 1945, ch. 63, § 6. Finally, since RCW 39.12.065[4] specifically provides for judicial review of prevailing wage enforcement actions, we conclude that the Legislature would have provided for judicial review in RCW 39.12.060 had it so intended. Thus, the APA review procedures do not apply to arbitration decisions rendered pursuant to RCW 39.12.060.

Notwithstanding this apparent bar to judicial review under the APA, this court still has the "inherent power" to review the DLI's decision. Under article 4, sections 1 and 6 of the Washington State Constitution, courts retain the "inherent power" to review any final action of an administrative agency. *Williams v. Seattle Sch. Dist. 1,* 97 Wn.2d 215, 221, 643 P.2d 426 (1982).[5] However, in reviewing the

---

[4]RCW 39.12.065 provides:

"(1) Upon complaint by an interested party, the director of labor and industries shall cause an investigation to be made to determine whether there has been compliance with this chapter and the rules adopted hereunder, and if the investigation indicates that a violation may have occurred, a hearing shall be held in accordance with chapter 34.05 RCW. The director shall issue a written determination including his or her findings after the hearing. *A judicial appeal from the director's determination may be taken in accordance with chapter 34.05 RCW,* with the prevailing party entitled to recover reasonable costs and attorneys fees.

". . . The remedy provided by this section is not exclusive and is concurrent with any other remedy provided by law." (Italics ours.)

[5]In its reply brief, Lockheed contends for the first time that RCW 39.12.065 provides the basis for this court's jurisdiction. A party cannot raise a contention for the first time in its reply brief, however. *Stevens v. Security Pac. Mortgage Corp.,* 53 Wn. App. 507, 519, 768 P.2d 1007, *review denied,* 112 Wn.2d 1023

DLI's decision in exercise of our inherent supervisory power, the scope of review is quite limited:

> [T]he judiciary will only review the actions of an administrative agency to determine if its *conclusions* may be said to be, *as a matter of law,* arbitrary, capricious, or contrary to law.

*Williams,* 97 Wn.2d at 221 (quoting *Helland v. King Cy. Civil Serv. Comm'n,* 84 Wn.2d 858, 862, 529 P.2d 1058 (1975)).

### III

Under our inherent power to review the DLI's decision, we next consider whether the DLI acted arbitrarily or capriciously in concluding that the pipefitter construction welders prevailing wage rate applied to the Lockheed boilermaker shipyard welders performing the work in question. Lockheed contends that the Director erred in failing to adopt the Administrative Law Judge's conclusion that because the "sheer size of the pipestems involved establish[ed] this as a unique project and one which could not [have been] performed without the special equipment and special skills found at a shipyard," the proper prevailing wage was the boilermaker shipyard rate.

■ RCW 39.12 is remedial in nature and should be construed liberally in order to "carry into effect the purpose of the statute." *Everett,* 109 Wn.2d at 823. The purpose of Washington's prevailing wage law is "'to protect the employees of government contractors from substandard earnings and to preserve local wage standards . . .". *Everett,* 109 Wn.2d at 823 (quoting *Unity Bank & Trust Co. v. United States,* 756 F.2d 870, 873 (Fed. Cir. 1985)).

RCW 39.12.010(1) defines the "prevailing rate of wage" as:

> the rate of hourly wage, usual benefits, and overtime paid in the locality, as hereinafter defined, to the majority of workers, laborers, or mechanics, in the same trade or occupation.

---

(1989). Moreover, Lockheed relies on documents and facts which are outside the record. This alone precludes consideration of it argument. *State v. Rienks,* 46 Wn. App. 537, 544–45, 731 P.2d 1116 (1987), *remanded,* 110 Wn.2d 1021 (1988).

Lockheed argues that RCW 39.12.010(1) and WAC 296–127–020(3) require the Department to determine the prevailing wage rate based on that paid to workers at the actual work site. Since the welding was performed in a shipyard, Lockheed argues, this constitutes the "locality" and the boilermaker shipyard rate applies.

■ Lockheed's argument is without merit. RCW 39.12-.010(2) defines "locality" as the "largest city in the county wherein the physical work is being performed." WAC 296–127–020(3), which interprets RCW 39.12.010(2), states:

> The definition of "locality" in RCW 39.12.010(2) contains the phrase "wherein the physical work is being performed." The department interprets this phrase to mean the actual work site. For example, if materials are prefabricated in a county other than the county wherein the public works project is to be completed, the wage for the prefabrication shall be the prevailing wage for the county where the physical work of prefabrication is actually performed. Standard items for sale on the general market are not subject to the requirements of chapter 39.12 RCW.

Clearly, both the statute and the regulation require that the prevailing wage rate be calculated based on the average rate of wages paid in the *county* where the work is performed, and not the rate of wages paid at a particular *plant,* as Lockheed urges. Indeed, if the prevailing wage rate were merely the rate of pay a particular employer decided to pay at its particular plant, the very purpose of RCW 39.12 to protect employees of government contractors from substandard earnings would be defeated. A government contractor could simply determine what rate would "prevail" at its particular plant.

Additionally, Lockheed's insistence that the so–called "established plant" exception enunciated in *District Coun. of Carpenters & Fisherman's Boat Shop,* Arbitration Decision 79–17 (Mar. 25, 1980) requires reversal here is unwarranted. In *Fisherman's,* a previous director of the Department of Labor and Industries had to decide what prevailing rate of wage would apply to workers constructing "floating dolphins", a device used to guide ferries into a

dock. The project was only the second "dolphin" project ever. Since there was no applicable "maritime construction" rate for this type of work, the Director had to determine what class of workers could perform the work in order to determine the applicable prevailing rate of wage. The evidence established that shipwrights could do the work. The Director therefore concluded that the shipwright rate applied. In so holding, the previous Director concluded:

> The prevailing wage law was not intended to require employers to hire any particular category of labor on a public project. It was intended only to require them to pay the category actually hired the prevailing rate of wage for that particular category. . . . [H]ad pile drivers been used, the prevailing rate of wage for that classification would be required. In this case, no pile drivers were employed. Thus, the pile drivers' rate is irrelevant. . . .

Relying on this decision, Lockheed argues that since the Duwamish project actually employed shipyard welders to weld the pipestems into unique lengths, the shipyard rate is the only applicable rate.

However, the Director here overruled *Fisherman's Boat Shop* to the extent that it conflicted with his decision in this case. Instead, the Director determined that the prevailing rate of wage applicable here was that rate paid to welders "in the same trade or occupation." While the Director acknowledged that this phrase is not defined in either the statute or the regulations, he ruled that the determination whether work is "in the same trade or occupation" depends upon the "*type* of work rather than where the work was performed or by whom it was done." (Italics ours.) Applying this test, the Director concluded that:

> [t]he work performed in the Lockheed Shipyard by Lockheed employees for the METRO public works project was of the same type and of a similar nature as work done by pipefitters in the construction industry in the fabrication of pipe for carrying sewage, water, oil, and gas.

Determination of the prevailing wage rate involves the "utilization of the specialized knowledge and judgment of the director of the Department of Labor and Industries." *Building Trades,* 91 Wn.2d at 47.

> Where an administrative agency is charged with administering a special field of law and endowed with quasi–judicial functions because of its expertise in that field, the agency's construction of statutory words and phrases and legislative intent should be accorded substantial weight when undergoing judicial review.

*Overton v. Economic Assistance Auth.,* 96 Wn.2d 552, 555, 637 P.2d 652 (1981).

 Here, the Director did not act arbitrarily or capriciously in concluding that the welding on the Duwamish project involved the "same trade or occupation" that welds other pipelines. This conclusion is supported by the undisputed facts of this case and the language of RCW 39.12.010.[6] Nor can it be said that the Director acted arbitrarily or capriciously in overruling the test articulated by another Director in *Fisherman's Boat Shop* in favor of applying a new test to determine prevailing wage rates.

> An administrative agency is not disqualified from changing its mind; and when it does, the courts still sit in review of the administrative decision and should not approach the statutory construction issue *de novo* and without regard to the administrative understanding of the statutes.

*NLRB v. Local Union 103, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers,* 434 U.S. 335, 351, 54 L. Ed. 2d 586, 98 S. Ct. 651 (1978).

Thus, we affirm the trial court's decision affirming the Director's interpretation of RCW 39.12.010.[7]

COLEMAN, C.J., and WEBSTER, J., concur.

Review denied at 114 Wn.2d 1017 (1990).

---

[6]Moreover, the Director's interpretation is consistent with *Thompkins v. Fuller,* 205 Mont. 168, 667 P.2d 944 (1983) in which the court interpreted the phrase "work of a similar character" in Montana's prevailing wage statute to refer to the entire project rather than the individual labor performed. *Thompkins,* 667 P.2d at 950. Here, Lockheed does not dispute the fact that the Duwamish project involved the construction of an effluent pipeline, work that is performed by pipefitter welders at construction sites, not boilermaker welders in shipyards.

[7]Lockheed also argues that its reliance on the statistician's determination of the prevailing wage and the boilermaker union's opinion that the shipyard rates

would apply, as well as public policy considerations, support reversal of the Director's interpretation of RCW 39.12.010. Because these arguments are bare assertions, unsupported by any authority, we need not consider them. *BC Tire Corp. v. GTE Directories Corp.,* 46 Wn. App. 351, 355, 730 P.2d 726 (1986), *review denied,* 108 Wn.2d 1013 (1987).