484

[No. 14213-9-II.   Division Two.   July 16, 1992.]

AK-WA, INC., *Respondent*, v. JOSEPH A. DEAR, *as Director of the Department of Labor and Industries*, ET AL, *Appellants.*

*Kenneth O. Eikenberry, Attorney General,* and *Leslie V. Johnson, Assistant,* for appellants.

*Dan S. Lossing,* for respondent.

PETRICH, C.J. — This is a dispute arising from three contracts between the Washington Department of Transportation (DOT) and AK-WA, Inc., to repair and refurbish ferries. Following the completion of the work on the ferries, the Department of Labor and Industries (Department) filed notices of violation, citing AK-WA for failure to pay the prevailing rate of wages as required by the contracts. The trial court found in favor of AK-WA as to the issues pertaining to the prevailing wage dispute, but against AK-WA on the issues pertaining to the apprenticeship training program. The court awarded $1,060,000 to AK-WA for lost profits resulting from the loss of bonding capacity required on most public contracts and some private contracts because of the Department's prevailing wage enforcement procedures. We reverse the rulings in favor of AK-WA pertaining to the prevailing wage dispute and affirm the rulings in favor of the Department pertaining to the apprenticeship training program.

AK-WA, Inc., is a shipbuilding and ship repairing company operating in Tacoma. During 1986 and 1987, AK-WA was the low bidder on three separate contracts to repair and refurbish Washington State ferries. Under RCW 39.12.010, such contracts for public works require that "[t]he 'prevailing rate of wage' . . . paid in the locality . . . to the majority of workers, laborers, or mechanics, in the same trade or occupation" be paid to workers under the contracts. The prevailing rate of wages is determined by the industrial statistician of the Department. RCW 39.12.015.

For the period beginning March 1, 1986, the industrial statistician had set the prevailing rate of wages based on the 1984 Metal Trades Council Collective Bargaining Agreement, which was effective until June 1986. The Department had been informed that the collective bargaining agreement covered the vast majority of workers in the shipbuilding trades in the state of Washington. The industrial statistician did not receive any complaints regarding his determination of the prevailing rate of wages.

Under WAC 296-127-011, prevailing rates of wages are published only on the first business days of February and August, to become effective 30 days hence. Based on the lack of complaint, the industrial statistician saw no need to change the prevailing rate of wages for the September 1986 and March 1987 periods.[1]

All three of the contracts offered to AK-WA by the DOT contained a special provision regarding the wages to be paid to those employees working under the contract:

> The prevailing rate of wages to be paid to all workmen, laborers, or mechanics employed in the performance of any part of this contract shall be in accordance with the provisions of Chapter 39.12 RCW as amended. The rules and regulations

---

[1] In 1987, the industrial statistician conducted a wage survey, in which AK-WA declined to participate. The survey indicated that the prevailing rate of wages had fallen below the rates contained in the collective bargaining agreement. After a number of meetings, in which AK-WA did participate, the industrial statistician reduced the prevailing rate of wages, effective December 15, 1987. However, because the contracts at issue were entered into before this date, this reduced prevailing rate of wages is inapplicable.

of the Department of Labor and Industries and the schedule of prevailing wage rates for the locality or localities where this contract will be performed as determined by the industrial Statistician of the Department of Labor and Industries are by reference made a part of this contract as though fully set forth herein.

Since the contractor will be held responsible for paying the prevailing wages, not less than the hourly minimum wage, it is imperative that all contractors familiarize themselves with the current wage rates before submitting bids based on these specifications.

In case any dispute arises as to what are the prevailing rates of wages for work of a similar nature and such dispute cannot be adjusted by the parties in interest, including labor and management representatives, the matter shall be referred for arbitration to the Director of the Department of Labor and Industries of the state and his decision therein shall be final and binding on all parties involved in the dispute as provided by RCW 39.12.060 as amended.

The affidavit of Wages Paid shall be submitted and receive certification by the Department of Labor and Industries before any payment can be made to the contractor.

During a preaward meeting, O. Fred Olson, the president of AK-WA, informed a DOT contracts officer that AK-WA "d[id] not go with the Metal Trades Council 1984 contract" insofar as it established the prevailing rate of wages. He did not seek to arbitrate his dispute regarding the prevailing rate of wages with the Department, as provided by RCW 39.12.060, WAC 296-127-060, and the proposed contracts. Rather, Olson signed a "Statement of Intent to Pay Prevailing Wage" and an affidavit of wages paid for each of the contracts. None of these documents set out what the prevailing rate of wages was, but only pledged that the "wage required by Chapter 39.12 RCW" would be paid, and asserted that the workers were "paid wages at the rates not less than those predetermined by the Department of Labor and Industries and as stated in the contract provisions."

The first contract, for repairs to the ferries *Kaleetan* and *Hyak*, was signed by Olson on October 3, 1986. The second contract, for repairs to the ferries *Yakima* and *Elwha*, was signed by Olson on December 23, 1986. The third contract, for topside preservation of the ferry *Walla-Walla*, was signed by Olson on March 2, 1987.

AK-WA completed all of the work under the contracts by May 1987. During the performance of the contracts, the DOT made all of the progress payments due and requested under the contract. In July or August of 1987 the Department audited AK-WA and subsequently issued three notices of violation for failure to pay prevailing wages. The Department also filed liens against AK-WA's retainage bond. As a result of these liens being filed, AK-WA was unable to bid on public works projects except for those with the Navy, Military Sea Lift Command, and the Coast Guard.

The notices of violation were appealed to an administrative law judge, who limited the scope of the issues before him to exclude the propriety and validity of the prevailing wage. AK-WA appealed this decision to the Director of the Department of Labor and Industries, who affirmed. The decision of the administrative law judge is currently on appeal to the Pierce County Superior Court in a separate action.

AK-WA commenced this action against the Department in Pierce County Superior Court in December 1988. In its complaint, AK-WA sought a declaration that the Department's interpretation and enforcement of the prevailing rate of wages statute is unconstitutional and void. It also requested injunctive relief and damages. After a bench trial lasting 3 days, the trial court entered findings of fact, conclusions of law and judgment in favor of AK-WA on most of the issues. The trial court declared that the prevailing rate of wages determined by the industrial statistician was contrary to law, enjoined the Department from enforcing the disputed rate of wages against AK-WA, and awarded AK-WA damages in the amount of $1,060,000, because of lost profits from public contracts caused by the improper filing of the liens against AK-WA's retainage bond.

The Department appeals on a number of grounds, including the trial court's jurisdiction to hear this case and its jurisdiction to award monetary damages. AK-WA cross-appeals on a number of issues, including the trial court's failure to award damages for the loss of profits from private

contracts and the court's refusal to find that the apprentice-
ship training program provision is unconstitutional.

APPEAL

While this appeal presents a number of issues, the deter-
minative issue is that of jurisdiction. The Department
argues that this case involves a dispute involving the deter-
mination of the prevailing rate of wages, and under RCW
39.12.060, the matter must be referred to arbitration before
the Director of the Department of Labor and Industries.
RCW 39.12.060 sets out the method for resolving disputes
about prevailing rates of wages in public works contracts:

Such contracts shall contain a further provision that in case
any dispute arises as to what are the prevailing rates of wages
for work of a similar nature and such dispute cannot be
adjusted by the parties in interest, including labor and
management representatives, the matter shall be referred for
arbitration to the director of the department of labor and
industries of the state and his or her decision therein shall be
final and conclusive and binding on all parties involved in the
dispute.

As set out above, each of the contracts contained a clause
mandating arbitration by the director in the event of a
dispute as to prevailing rates of wages. AK-WA responds
that there was no "dispute" within the meaning of RCW
39.12.060 and thus arbitration was not required.

The Department relies on the cases of *Southeastern Wash.
Bldg. & Constr. Trades Coun. v. Department of Labor &
Indus.*, 91 Wn.2d 41, 586 P.2d 486 (1978) and *Lockheed
Shipbuilding Co. v. Department of Labor & Indus.*, 56 Wn.
App. 421, 783 P.2d 1119 (1989), *review denied*, 114 Wn.2d
1017 (1990), for the proposition that the superior court had
no jurisdiction to hear AK-WA's challenges to the prevailing
rate of wages. The court in *Building Council* did not address
the issue of what constitutes a "dispute" for the purposes of
RCW 39.12.060. The court noted that, "[s]ince the statisti-
cian is required to determine the prevailing wage, it will
always be his decision which is disputed." *Building Council*,
91 Wn.2d at 47. The court held that the mechanism for
challenging the prevailing rate of wages was arbitration

under RCW 39.12.060, not direct judicial review. *Building Council.*

In *Lockheed Shipbuilding*, the court was asked to consider whether there was review available from the decision of the Director after arbitration pursuant to RCW 39.12.060. The court held that, although the language of the statute tends to indicate that the Director's determination is final, the superior court still has the inherent power to review the Director's determination under article 4, sections 1 and 6 of the Washington State Constitution. *Lockheed Shipbuilding*, 56 Wn. App. at 426 (citing *Williams v. Seattle Sch. Dist. 1*, 97 Wn.2d 215, 221, 643 P.2d 426 (1982)). There was no question as to the existence of a dispute, nor did the court express any opinion as to the nature of the requisite dispute for the purposes of RCW 39.12.060.

█ █ The record in this case establishes that there was a dispute between AK-WA and the Department regarding the prevailing rate of wages set by the industrial statistician. The dispute is evidenced by Olson's statement during the preaward meeting that he "d[id] not go with the Metal Trades Council 1984 contract", which was the basis for the applicable prevailing rate of wages, his subsequent signing of the "Statement of Intent to Pay Prevailing Wages", and AK-WA's payment of wages below the prevailing rate of wages set by the industrial statistician. AK-WA contends that there was no "dispute", because the DOT did not react to his statement that he "did not go with" the prevailing rate of wages. It argues that the Department acquiesced in the payment of wages below the prevailing rate. We reject this argument. There is no indication that either the Department or the DOT can waive the requirement of paying the prevailing rate of wages, or can acquiesce to payments below the prevailing rate of wages.

█ Under the terms of RCW 39.12.010 and the contract, AK-WA was required to pay the prevailing rate of wages established by the industrial statistician. If AK-WA differed with the prevailing rate of wages, its remedy was to begin arbitration with the Director of the Department of Labor

and Industries, under RCW 39.12.060 and the contracts. There was no obligation on the part of the Department to begin arbitration based on Olson's statement that he "did not go with" the prevailing rate of wages, especially when he later signed the statement agreeing to pay the prevailing rate. Having failed to avail itself of the administrative remedy of arbitration, the doctrine of exhaustion of remedies prohibits the superior court from taking jurisdiction of AK-WA's challenge to the prevailing rate of wages. *Building Council*, 91 Wn.2d at 47; *Lockheed Shipbuilding*, 56 Wn. App. at 425. *See also South Hollywood Hills Citizens Ass'n v. King Cy.*, 101 Wn.2d 68, 73, 677 P.2d 114 (1984).

The "inherent power of review" doctrine discussed in *Lockheed Shipbuilding* does not confer jurisdiction on the superior court for AK-WA's challenge. That doctrine applies only to the court's inherent power to review *final* decisions of administrative agencies. *Lockheed Shipbuilding*, 56 Wn. App. at 426. As there was no decision of the Director of the Department of Labor and Industries, there was no final decision for the court to review.

The superior court was without jurisdiction to consider AK-WA's challenges to the determination of the prevailing rate of wages and to its obligations to pay the prevailing rate. Therefore, the court's findings of fact and conclusions of law regarding AK-WA's challenges to the payment of the prevailing rate of wages are reversed. AK-WA was obliged to pay the prevailing rate of wages. When it did not do so, the Department was authorized to issue notices of violation and to file liens against AK-WA's retainage bond. RCW 39.12-.050. The "lost profits" asserted by AK-WA were not the result of an improper filing of liens by the Department, and the award of damages is reversed. Therefore, we need not address whether such awards of damages are proper in declaratory judgment actions, or the measure of such damages. Nor do we need to address whether the dispute between AK-WA and the Department was a tort action or a breach of contract action.

CROSS APPEAL

AK-WA argued that the Washington apprenticeship training program, set out in RCW 49.04, is unconstitutional and invalid.[2] AK-WA's sole basis for this contention is the case of *Duranceau v. Tacoma*, 27 Wn. App. 777, 620 P.2d 533 (1980), in which the City of Tacoma owned property along the Green River in King County, where it maintained a watershed. Tacoma allowed logging companies to use a road running over its watershed, except those logging companies that employed citizens of the town of Lester, located within the watershed. The plaintiff, who lost his job with a logging company because he was a resident of Lester, brought an action against Tacoma, alleging violation of his rights to due process and denial of equal protection. The trial court granted summary judgment in favor of Tacoma, but the Court of Appeals reversed, holding that:

> Duranceau, as a prospective employee of a logging operator, falls within a group of persons otherwise allowed access on FSR 212. While Tacoma is under no duty to make FSR 212 "available for private purposes, if it elects to do so, it must make [it] available on a nondiscriminatory basis . . ." Moreover, the "strict scrutiny" test applicable to classification schemes affecting fundamental rights requires a showing that the classification is necessary to, and the least intrusive means of, achieving the compelling state interest. *Dunn v. Blumstein*, 405 U.S. 330, 31 L. Ed. 2d 274, 92 S. Ct. 995 (1972).

(Citation omitted.) *Duranceau*, 27 Wn. App. at 780. The court went on to note:

> The right to hold specific private employment free from unreasonable government interference is a fundamental right which "comes within the 'liberty' and 'property' concepts of the Fifth Amendment, . . . " *Greene v. McElroy*, 360 U.S. 474, 492, 3 L. Ed. 2d 1377, 79 S. Ct. 1400 (1959). This fundamental right is protected against state interference by the Fourteenth Amendment.

*Duranceau*, at 780.

■ AK-WA seeks to characterize its right to participate in an "approved" apprenticeship training program as a fun-

---

[2]AK-WA's brief fails to set out what particular provision of the constitution the apprenticeship training program violates, and in fact, fails to say whether it is the federal or state constitution that this statutory scheme allegedly violates.

damental right akin to the right to hold specific private employment affected in *Duranceau*. However, AK-WA cites no authority supporting the proposition that an employer has a fundamental right to have his employees participate in an "approved" training program. AK-WA does not show an impact on any single individual's employment, as was the case in *Duranceau*. Rather, the only effect the apprenticeship training program had upon AK-WA is that it had the choice of not agreeing to the terms of the collective bargaining agreement, thereby paying its apprentices the higher prevailing wage, or of agreeing to the terms of the collective bargaining agreement, thereby taking advantage of the union-run apprenticeship training program with its lower apprenticeship wage. In the latter case, AK-WA would merely be on the same footing as the other shipbuilders and ship repairers who had union shops and followed the collective bargaining agreement. The "right" to have the advantages of the apprenticeship training program and its lower wages without the burdens of a collective bargaining agreement cannot be deemed "fundamental" for the purposes of substantive due process, nor does the program involve a classification system affecting fundamental rights. Accordingly, AK-WA has not established that the apprenticeship training program is unconstitutional.

## CONCLUSION

The judgment in favor of AK-WA regarding its challenge to the prevailing rate of wages, and the findings of fact and conclusions of law pertaining thereto, are reversed for lack of jurisdiction. The award of damages is similarly reversed. The judgment rejecting the challenge to the apprenticeship training program's constitutionality is affirmed.

ALEXANDER and MORGAN, JJ., concur.

Review denied at 121 Wn.2d 1004 (1993).