[No. 8931–5–I.   Division One.   December 8, 1980.]

RONALD D. DURANCEAU, *Appellant,* v. THE CITY OF TACOMA, ET AL, *Respondents.*

*MacDonald, Hoague & Bayless* and *Robert C. Randolph,* for appellant.

*Mark L. Bubenik,* for respondents.

JAMES, J.—Plaintiff Ronald D. Duranceau appeals the entry of summary judgment in favor of defendant City of Tacoma in an action raising constitutional and tort claims. We reverse.

The Green River watershed, located in King County, is the source of Tacoma's water supply. Although other entities own much of the watershed's land area, Tacoma owns most of the land along the Green River itself. Tacoma also owns most of the land included within the boundaries of Lester, a small town located within the watershed. Several hundred people lived in Lester until a Scott Paper Company plant there closed in early 1978. The population dropped precipitously after the plant closed, and only four families lived in Lester at the time this appeal was taken.

The only access to Lester is a road built by the United States Forest Service, FSR 212. The road is generally located within the boundaries of city–owned property, although it meanders outside at several points. Tacoma maintains a gate in order to control use of the road and limits public access to the watershed to persons having city–issued permits. Although the status of FSR 212 as a public road is not clear, it is undisputed that Tacoma has not objected to its use for logging purposes.

Tacoma, however, has established a policy of denying use of FSR 212 to logging operators in the watershed if they employ Lester residents. The stated purpose is to protect Tacoma's primary water source from pollution. Thus, Lester residents cannot work in the watershed, but they may travel on FSR 212 to jobs outside the watershed. In contrast, any non–Lester resident may use FSR 212 to reach a logging site located within the watershed.

Duranceau moved to Lester to work for Scott in 1971 and continued living there after the plant closed. He leased a mobile home site in Lester on a month–to–month basis from Tacoma. In May 1978, Duranceau was offered and accepted employment at a logging operation at a site in the watershed owned by Burlington Northern. The jobsite could be reached only by travel along FSR 212. The job offer was withdrawn after a city representative advised the operator that access along FSR 212 would be denied if Duranceau was employed.

Duranceau's complaint alleges tortious interference with a contractual relationship. He also asserts claims under 42 U.S.C. § 1983 (the Civil Rights Act of 1871), alleging violation of his fundamental right to travel, violation of his fundamental right to earn a living, denial of procedural due process and denial of the equal protection of the laws.

■■ Tacoma's interests in protecting the quality of its water supply and in preserving its property rights are important and perhaps compelling state interests. But neither Tacoma's ownership of watershed property nor its right to control access along FSR 212, if proven, exempts it

from constitutional limitations in establishing or operating a classification system which impinges on fundamental rights or denies equal protection of the laws. Duranceau, as a prospective employee of a logging operator, falls within a group of persons otherwise allowed access on FSR 212. While Tacoma is under no duty to make FSR 212 "available for private purposes, if it elects to do so, it must make [it] available on a nondiscriminatory basis . . ." *Hillside Community Church, Inc. v. Tacoma,* 76 Wn.2d 63, 67, 455 P.2d 350 (1969). Moreover, the "strict scrutiny" test applicable to classification schemes affecting fundamental rights requires a showing that the classification is necessary to, and the least intrusive means of, achieving the compelling state interest. *Dunn v. Blumstein,* 405 U.S. 330, 31 L. Ed. 2d 274, 92 S. Ct. 995 (1972).

■ The right to hold specific private employment free from unreasonable government interference is a fundamental right which "comes within the 'liberty' and 'property' concepts of the Fifth Amendment, . . ." *Greene v. McElroy,* 360 U.S. 474, 492, 3 L. Ed. 2d 1377, 79 S. Ct. 1400 (1959). This fundamental right is protected against state interference by the Fourteenth Amendment.

The right to interstate, *Shapiro v. Thompson,* 394 U.S. 618, 22 L. Ed. 2d 600, 89 S. Ct. 1322 (1969), and the right to intrastate travel, *Eggert v. Seattle,* 81 Wn.2d 840, 505 P.2d 801 (1973), are also fundamental constitutionally guaranteed rights. However, Tacoma's classification system apparently barred Duranceau from watershed employment only so long as he was a Lester resident. As such, it is analogous to a continuing residency requirement, which does not burden this fundamental right to travel. *McCarthy v. Philadelphia Civil Serv. Comm'n,* 424 U.S. 645, 47 L. Ed. 2d 366, 96 S. Ct. 1154 (1976).

■ Duranceau's complaint does, however, state prima facie due process and equal protection claims under section 1983 regarding his fundamental right to employment. Duranceau's complaint also states a prima facie claim under the

common law tort of interference with a contractual relationship. *Calbom v. Knudtzon,* 65 Wn.2d 157, 396 P.2d 148 (1964). We conclude the trial judge erred as a matter of law in entering summary judgment against Duranceau on his claims.

The summary judgment is reversed and the case remanded for trial consistent with this opinion.

CALLOW, C.J., and DORE, J., concur.