STATE of Wyoming, in the Interest of
C, D, and J, Minors.

B, Appellant (Respondent),

v.

PLATTE COUNTY DEPARTMENT OF
PUBLIC ASSISTANCE AND SOCIAL
SERVICES, Appellee (Petitioner).

No. C–5.

Supreme Court of Wyoming.

Dec. 31, 1981.

Josephine T. Porter, Legal Services for Southeastern Wyoming, Inc., Cheyenne, for appellant.

Richard E. Dixon, Deputy County and Pros. Atty. for Platte County, Wheatland, for appellee.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

ROONEY, Justice.

This is an appeal by B, the mother of minor children C, D and J, from an order of the juvenile court continuing custody and control of such children in the Platte County Department of Public Assistance and Social Services (hereinafter referred to as DPASS), until May 26, 1981, at which time the matter was subject to be reviewed again.

B (hereinafter referred to as mother) words the issues on appeal as follows:

"I. Whether the Court lacked jurisdiction to remove custody of the minor children from Appellant due to the Court's failure to comply with Wyoming Statutes 14–6–209(b) and (c), 14–6–226 and 14–6–229(b) (1978 as amended).

"II. Whether the decision of the Court is supported by by [sic] substantial evidence, is clearly erroneous and is contrary to the law and the evidence.

"III. Whether the Juvenile Court and the Appellate Court should apply the strict scrutiny standard to review the State's allegations of neglect."

We affirm.

C is a 7-year-old female child; D is a 5-year-old female child; and J is a 1-year-old female child. They were placed in emergency shelter care by DPASS on January 26, 1981, after their parents were arrested and detained. On January 27, 1981, the parents gave written consent for such care for a period until February 25, 1981.

On February 4, 1981, a petition was filed in the Juvenile Court, County of Platte, Eighth Judicial District, requesting the jurisdiction be taken by such court over C, D and J inasmuch as they were subject to neglect as defined in § 14–6–201, W.S.1977.[1] The petition alleged in part:

"These children have been without proper care and control and have lacked supervision necessary for their health and welfare because of the faults, habits, conduct, acts or omissions of their parents, which parents have been unable in any event to discharge their responsibilities since the 26th day of January, 1981, because of their incarceration in the Platte County Jail."

On the same date, the Deputy County and Prosecuting Attorney filed a motion to continue custody of the children in DPASS pending additional study and report. It alleged in part:

"9. That these children have been witness to acts committed by their parents and their aunt, * * * age fourteen (14), that lie beyond the bounds of the law as set forth in the Wyoming Statutes, specifically Sections 14–3–102, 14–3–104, 14–3–105 and 6–5–107, in that they were present during intercourse between their father and their aunt, and during photography sessions where their aunt was photographed in various positions in the nude, and engaged with their mother in various sexual acts;"

It noted that should the mother be incarcerated for the criminal charges pending against her, she would be unable to care for the children; and if she were placed on probation, the allegation of neglect "should be reviewed prior to the return of the children to her home."

On February 5, 1981, a hearing was held on the motion. C, D, J, and their parents were present. An attorney was appointed to represent the minor children. The mother and the father acknowledged that they were represented by attorneys. When they were asked whether or not they had any objection to the continuance of custody by DPASS, the father answered:

"No, sir. I don't know if it's the right time, but I would—you know, we have discussed it and we feel that, you know, they should be, you know, sent, you know, to my mother in Tennessee."

The mother answered:

"I'm not sure. I'm rather confused. I am not quite sure, but I feel it would probably be the best for them too to go to Tennessee."

---

1. Section 14–6–201(xvi) provides in pertinent part:

"(xvi) 'Neglected child' means a child who is:
* * * * * *
"(C) Without proper care and control or lacks subsistence, education as required by law, medical care or treatment or supervision necessary for his health and welfare because of the faults, habits, conduct, acts or omissions of his parents, guardian or custodian; or
"(D) Subject to parents, a guardian or custodian who are unable to discharge their responsibilities to the child because of incarceration, hospitalization or other physical or mental incapacity. * * *"

168

The court ordered continued care, custody and control of the children by DPASS "until further order of this Court and until this entire matter has been fully brought before the Court and determined."

On April 24, 1981, mother moved the court for a hearing on the petition, requesting that the custody of the minor children be returned to her. A hearing thereon was held on May 26, 1981. By then, mother had been placed on probation. Evidence was presented and received. Thereafter, the court found that mother had "not achieved * * * the ability to provide proper parenting for the juveniles" at that time. It ordered custody and control of the children to remain in DPASS, and that they be placed in the home of their paternal grandparents in Moss, Tennessee, for a period of one year from May 26, 1981. It ordered submission of reports on the progress of the mother and children, and it showed that it would review the matter in one year with a "goal" of returning custody to the mother when such return "is appropriate."

### FINAL ORDER

Before addressing the issues presented on appeal by mother, we must examine the nature of the order from which the appeal was taken. At the present time, our review under the Wyoming Rules of Appellate Procedure is limited to that of final orders.

"A final order is: (1) an order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment; (2) an order affecting a substantial right, made in a special proceeding * * *." Rule 1.05, W.R.A.P.

■ There can be no doubt that a transfer of custody from a natural parent for a period of one year concerns a substantial right. *DS v. Department of Public Assistance and Social Services*, Wyo., 607 P.2d 911 (1980); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). The order resulting from the hearing of February 5, 1981, which continued custody of the children in DPASS pending the hearing on the petition for jurisdiction in the juvenile

court, was obviously an interim order to provide temporary custody for the minor children as was necessitated by the arrest of their parents. While incarcerated, the parents were not physically able to take control of the children. It anticipated a more complete and determinative hearing in a very short time. In view of the parents' incarceration and the short time span, it did not affect a substantial right. The same cannot be said of the May 26, 1981 order. The mother had been placed on probation. She was physically able to take control of the children. The order was to be effective for a prolonged period of time. A substantial right was involved.

■ Proceedings under the Juvenile Court Act are "special proceedings." The nature of special proceedings was discussed at length in *Anderson v. Englehart*, 18 Wyo. 196, 105 P. 571 (1909). And see *In Re Greybull Valley Irr. Dist.*, 52 Wyo. 479, 76 P.2d 339 (1938). Generally, special proceedings are those which were not actions in law or suits in equity under common law, and which may be commenced by motion or petition upon notice for the purpose of obtaining relief of a special or distinct type. They result from a right conferred by law together with authorization of a *special* application to the courts to enforce it. *Anderson v. Englehart*, supra; *Church v. County of Humboldt*, 248 Cal.App.2d 855, 57 Cal. Rptr. 79 (1967); *Application of Allen*, 207 Misc. 1036, 142 N.Y.S.2d 547 (1955); *Willeck v. Willeck*, 286 Minn. 553, 176 N.W.2d 558 (1970); *State v. Guatney*, 207 Neb. 501, 299 N.W.2d 538 (1980). In *Strode v. Brorby*, Wyo., 478 P.2d 608 (1970), we recognized that, even in cases involving delinquency, proceedings under a Juvenile Court Act could be in lieu of proceedings under the general criminal procedure:

"In all cases involving juveniles, the juvenile court shall, in the exercise of its discretion, determine initially whether these rules shall apply to the juvenile proceedings or whether the proceedings shall be subject to the provisions of the

Juvenile Court Act of 1951.[2] * * * "
Rule 51(b), W.R.Cr.P.

The language of the enactment reflects its special nature under the foregoing definitions:

"All proceedings under this act shall be regarded as proceedings in equity and the court shall have and exercise equitable jurisdiction. * * * " Section 14–6–238, W.S.1977.

"(c) The jurisdiction of the juvenile court is not exclusive. * * * " Section 14–6–203(c), W.S.1977.

"Complaints alleging a child is delinquent, in need of supervision or neglected shall be referred to the office of the county and prosecuting attorney. The county attorney shall determine whether the best interest of the child or of the public require that judicial action be taken. * * * " Section 14–6–211, W.S.1977.

"Proceedings in juvenile court are commenced by filing a petition with the clerk of the court. The petition and all subsequent pleadings, motions, orders and decrees shall be entitled 'State of Wyoming, In the Interest of . . . ., minor.' * * * " Section 14–6–212(a), W.S.1977.

Section 14–6–229, W.S.1977 sets forth the disposition to be made of a child adjudged "to be neglected, delinquent or in need of supervision." The special and distinct type of relief authorized by § 14–6–229 indicates the special status of the proceedings. Section 14–6–229(a)(b)(c) and (d) provide:

"(a) When a child is adjudged by the court to be neglected, delinquent or in need of supervision, the court shall enter its decree to that effect and make any disposition as provided in this section. The dispositions shall be guided by what is best suited to the protection and physical, mental and moral welfare of the child consistent with the public interest.

"(b) If the child is found to be neglected the court may:

"(i) Permit the child to remain in the custody of his parents, guardian or custodian without protective supervision, subject to terms and conditions prescribed by the court;

"(ii) Place the child under protective supervision;

"(iii) Transfer temporary legal custody to a relative or other suitable adult the court finds qualified to receive and care for the child, with or without supervision, subject to terms and conditions prescribed by the court;

"(iv) Transfer temporary legal custody to a private child care facility, organization or institution willing to assume the education, care and maintenance of the child; or

"(v) Transfer temporary legal custody to a state or local public agency responsible for the care and placement of neglected children, but the child shall not be committed to the Wyoming industrial institute or the Wyoming girls' school unless also found delinquent or in need of supervision.

"(c) If the child is found to be delinquent or in need of supervision the court may:

"(i) Order any disposition authorized for a neglected child except that a child found to be delinquent or in need of supervision shall be placed on probation rather than under protective supervision;

"(ii) Commit the child to confinement in the county jail or other restrictive facility the court may designate for not more than ten (10) days segregated from adult prisoners;

"(iii) Commit the child to the Wyoming industrial institute or the Wyoming girls' school for an indefinite term; or

"(iv) Commit the child to the Wyoming state hospital for short term confinement and treatment for drug addiction or abuse, alcoholism or for specialized treatment and rehabilitation programs conducted especially for juveniles.

"(d) As a part of any order of disposition and the terms and conditions thereof, the court may:

"(i) Require a child to make restitution for any damage or loss caused by his wrongful act;

2. See fn. 4, infra.

"(ii) Impose a fine within the limits of law for an offense or misconduct by the child where a fine might be imposed by another court in this state having jurisdiction thereof. Fines shall be paid to the clerk of court for deposit to the public school fund of the county in which the fine was assessed as provided by law;

"(iii) Require a child to participate in a work program or to perform labor or services under the supervision of a responsible adult designated by the court and within the limits of applicable laws and regulations governing child labor, to enable the child to meet the obligations imposed pursuant to this act or for the purpose of discipline and rehabilitation when deemed necessary or desirable by the court;

"(iv) Order the child to be examined or treated by a physician, surgeon, psychiatrist or psychologist or to obtain other specialized treatment, care, counseling or training, and place the child in a hospital or medical facility, youth camp, school or other suitable facility for treatment;

"(v) Restrict or restrain the child's driving privileges for a period of time the court deems appropriate, and if necessary to enforce the restrictions the court may take possession of the child's driver's license; or

"(vi) Impose any demands, requirements, limitations, restrictions or restraints on the child, and do all things with regard to the child that his parents might reasonably and lawfully do under similar circumstances."

**3.** At several times during the proceedings in this matter, the fact was noted that it was not an action for termination of parental rights. This distinction is pertinent with reference to the existence of a final order. In this juvenile court proceeding, the final order was a definite determination of neglect from which a temporary change in custody could result. In a proceeding for termination of parental rights, a temporary change in custody may be ordered pending a final determination whether or not the rights of the parents should be terminated.

With reference to the disposition to be made of a child found neglected (subsection (b) of § 14–6–229, supra) anticipation of future change is contained in the words "transfer *temporary* legal custody." Section 14–6–229, supra, sets forth the disposition to result from action by the juvenile court. It is the action referred to in § 14–6–233(a), W.S.1977, which provides:

"Any party, including the state may appeal any final order, judgment or decree of the juvenile court to the supreme court within the time and in the manner provided by the Wyoming Rules of Civil Procedure."

When the trial court made its ruling from the bench after the May 26, 1981 hearing, mother's counsel inquired: "Is that a final order of this Court on the matter?" The court responded: "That is a final order."

The appeal here is from an appealable order.[3]

### JURISDICTION

Mother questions the jurisdiction of the court to remove custody of the minor children from her because of alleged failure to procedurally comply with §§ 14–6–209(b) and (c), 14–6–226 and 14–6–229(b), W.S. 1977.[4]

Such enactment was a result of *Application of Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), which mandated due process rights for juveniles charged as delinquents. However, the enactment encompasses procedure for *neglected* children as well as *delinquent* children. It defines a delinquent child as one who has committed a delinquent act, and a delinquent act as one "punishable as a criminal offense."

This order temporarily changing custody in the termination of parental rights proceeding is not a final order. See *DS v. Department of Public Assistance and Social Services, supra.*

**4.** The enactment was originally passed in 1971 to replace the Juvenile Court Act of 1951. It was amended to its present form in 1978. Recently (in 1981) it was again amended with the amendments to be effective on April 1, 1982.

Section 14–6–201(a)(ix) and (x), W.S.1977.[5] The proceedings in this case were in connection with *neglected* children, and the provisions of the enactment relative to delinquent children are not applicable. However, the distinction between the two proceedings is not specifically marked in the enactment in all instances,[6] and the application of the provisions of the act made by us in this matter is particularly with reference to the circumstances in this case wherein the children are of very tender age and certainly without any delinquency and where the lewd acts of the parents in the presence of the children resulted in the incarceration of the parents and presented the issue of neglect.

Appellant contends that the trial court did not comply with the provisions of § 14–6–209(b) and (c), W.S.1977[7] and that such failure was fatal to any subsequent order of the court which did not return custody of the children to her. The children were placed in shelter care without a court order when their parents were arrested. The next day, the parents gave written consent to such shelter care for one month.

The care was a vital need for children aged 7, 5 and 1 who were left on their own upon the arrest of their parents. The written consent of the parents effectively waived the informal, within 72 hours, hearing. Mother does not assert error in a delay of the hearing for a period in excess of 72 hours as is required by subsection (a) of § 14–6–209, W.S.1977, but she complains that the advice required by subsection (b) thereof was not given to her at the February 5, 1981 hearing on the motion to continue custody of the children in DPASS until a predisposition study and report was made. Both parents acknowledged at that hearing that they were represented by counsel. Counsel was appointed for the minor children. The parents had received and read the petition.

■ The advice required by subsection (b) of § 14–6–209, W.S.1977 is directed primarily at proceedings involving delinquency rather than neglect. The recitation of the items of advice to be given concludes with "[a]ll other rights afforded a *criminal* defendant" (emphasis added). Subsection (c) is directed primarily at proceedings involv-

---

**5.** See fn. 1 for definition of a neglected child.

**6.** The distinction is specified in some instances, e.g., "placement" is distinguished from "commitment" in the definitions of "detention" in § 14–6–201(a)(xii), W.S.1977, and of "shelter care" in § 14–6–201(a)(xxii), W.S.1977, and e.g., § 14–6–225(a), W.S.1977 provides:

"(a) Allegations that a child has committed a delinquent act or is in need of supervision must be proved beyond a reasonable doubt. Allegations of conduct showing a child to be neglected must be proved by a preponderance of the evidence."

**7.** Section 14–6–209(a)(b) and (c), W.S.1977 provides:

"(a) When a child is placed in detention or shelter care without a court order, a petition as provided in W.S. 14–6–212 shall be promptly filed and presented to the court. An informal detention or shelter care hearing shall be held as soon as reasonably possible not later than seventy-two (72) hours after the child is taken into custody to determine if further detention or shelter care is required pending further court action. Written notice stating the time, place and purpose of the hearing shall be given to the child and to his parents, guardian or custodian.

"(b) At the commencement of the hearing the judge shall advise the child and his parents, guardian or custodian of:

"(i) The contents of the petition and the nature of the charges or allegations contained therein;

"(ii) Their right to counsel as provided in W.S. 14–6–222;

"(iii) The child's right to remain silent with respect to any allegations of a delinquent act;

"(iv) The right to confront and cross-examine witnesses or to present witnesses in their own behalf;

"(v) The right to a jury trial as provided in W.S. 14–6–223;

"(vi) The right to appeal as provided in W.S. 14–6–233; and

"(vii) All other rights afforded a criminal defendant.

"(c) The child or in cases of neglect the parents, guardian or custodian shall be given an opportunity to admit or deny the allegations in the petition. If the allegations are admitted, the court shall make the appropriate adjudication and may proceed immediately to a disposition of the case in accordance with the provisions of W.S. 14–6–229. If denied, the court shall set a time for an adjudicatory hearing or a transfer hearing, whichever the court deems appropriate."

ing neglect. It says so in so many words. It provides for an opportunity to admit or deny the allegations of the petition and for summary disposition if admitted. Such summary disposition was not made. An adjudication hearing or transfer hearing was later held as required by the subsection if the allegations of the petition were denied. Thus, mother was not prejudiced. Sufficient compliance with the requirements of § 14–6–209, W.S.1977 was had under the circumstances of this case. And we reemphasize that we find such *under the circumstances of this case.*

■ The same can be said with reference to mother's contention that error existed for the alleged failure of the trial court to follow the procedure set forth in §§ 14–6–226 and 14–6–229(b), W.S.1977. Mother asserts that the trial court did not make a finding of neglect and that § 14–6–226(c), W.S.1977 [8] requires such finding before the court could make the disposition of the children here made under § 14–6–229(b), supra. In its order, the trial court did not use the words "I find neglect," but it did set forth findings which constitute a finding of neglect. In stating its findings from the bench, the court noted that it was going "back to the original charges * * * and the allegations contained therein" and that it "must look at this entire file." He said that mother had not "achieved the ability to be a responsible mother"; that "she needs further counseling"; and that there should be a better relationship than that in which the "dependence is from the parent on the child and not the children on the parent." In the order of disposition, the court found that

mother was not "in a stable condition that could provide the care presently needed" by the children, and that she had not achieved "the ability to provide proper parenting for" them.

These findings were tantamount to a finding of neglect. They reflected that the children were "without proper care and control * * * or [without] supervision necessary for * * * [their] health and welfare because of the faults, habits, conduct, acts or omissions" of mother; and that mother was "unable to discharge * * * [her] responsibilities" to the children because of "physical or mental incapacity." [9] The findings are sufficient for the purposes under the circumstances of this case.

## SUBSTANTIAL EVIDENCE

■ Before the court was the fact that mother had been arrested with her husband after taking part in lewd and deviate sexual acts in the presence of the children as alleged in the motion for continued custody.[10] Mother was originally deprived of the custody of the children for this reason and because she was incarcerated. Mother was on probation. She had moved to Rawlins. She was sharing living quarters with another woman and that woman's two daughters, aged 14 and 5. She visited her husband regularly at the state penitentiary. She was unemployed but seeking employment. She is receiving mental health counseling.

Testimony was received at the hearing from mother, from a psychotherapist who counseled with mother when she was in Wheatland, from the social worker who

8. Section 14–6–226(b) and (c) provide in pertinent part:

"(b) * * * If after an adjudicatory hearing the court finds that the allegations in the petition are not established as required by this act, it shall dismiss the petition and order the child released from any detention or shelter care.

"(c) If after an adjudicatory hearing or a valid admission or confession the court or jury finds that a child committed the acts alleging him delinquent or in need of supervision or that a child is neglected, it shall enter a decree to that effect stating the jurisdictional facts upon which the decree is based.

It may then proceed immediately or at a postponed hearing to make proper disposition of the child."

9. The quotations are from the statutory definition of "neglected child." See fn. 1.

10. The court noted that it was referring to the entire file. It could take judicial notice of its own records in the case before it or in a case closely related to it. *State ex rel. Romsa v. Grace,* 43 Wyo. 454, 5 P.2d 301 (1931); *Ellis v. Cauhaupe,* 71 Wyo. 475, 260 P.2d 309 (1953); *Weber v. Johnston Fuel Liners, Inc.,* Wyo., 540 P.2d 535 (1975).

made the home study of mother in Wheatland and who placed the children in a foster home, and from a social worker who has counseled with mother twice in Rawlins. The psychotherapist and the social worker from Rawlins said that, in their opinion, it would be proper for mother to have custody of the children. The social worker from Wheatland disagreed. She said that the mother was generally too unstable emotionally to have such custody. A study of the paternal grandparents' home in Moss, Tennessee, reflected it to be a satisfactory farm place, and that the grandparents were capable people of good character and reputation.

The evidence was sufficient to support the trial court's determination that the best interests of the children would be served by not returning them to the custody of the mother until her situation became more stable and until more time had elapsed after the incident to which the children were subjected and which triggered removal of their custody from her.

### STRICT SCRUTINY

Since this is true even under the standard of strict scrutiny, we need not consider whether or not a less stringent standard is proper in this case. "Strict scrutiny" is the standard applied when it becomes necessary to balance a fundamental right against a compelling state interest. It requires the establishment of the compelling state interest and the showing that the method of achieving such is the least intrusive of those methods by which such can be accomplished. See *DS v. Department of Public Assistance and Social Services*, supra; *State ex rel. McDonald v. Whatcom County District Court*, 19 Wash.App. 429, 575 P.2d 1094 (1978), aff'd 92 Wash.2d 35, 593 P.2d 546 (1979); *Meloon v. Helgemoe*, 436 F.Supp. 528 (D.C.N.H.1977), aff'd 564 F.2d 602, cert. denied 436 U.S. 950, 98 S.Ct. 2858, 56 L.Ed.2d 793; *Duranceau v. City of Tacoma*, 27 Wash.App. 777, 620 P.2d 533 (1980); *Alevy v. Downstate Medical Center*, 39 N.Y.2d 326, 384 N.Y.S.2d 82, 348 N.E.2d 537 (1976); *Constructors Association of Western Pennsylvania v. Kreps*, 441 F.Supp. 936 (D.C.Pa.1977), aff'd 573 F.2d 811 (1978).

The compelling state interest in this case is the needs and welfare of the children. The trial court stated that such was its primary concern. The fundamental right of the mother to have custody of her children must be weighed against the necessity of maintaining the children in an atmosphere free of incest and sexual perversion. The State did not take action to terminate mother's parental rights (this is not to say that such would have been proper or improper). Rather, it moved only to remove custody of the children from the mother until there was a reasonable probability that the improper atmosphere would no longer be present. The trial court said it would review the matter in six months and again in one year. The method chosen to achieve the State's interest in the welfare of the children was one of the "least intrusive" under the circumstances into the mother's right to custody of the children.

Affirmed.