Susan Kay MICHAEL and Chris Michael,
Appellants (Plaintiffs),

and

Wyoming Attorney General, Appellant,

v.

Dean B. HERTZLER, Appellee
(Defendant).

No. 94–123.

Supreme Court of Wyoming.

Aug. 4, 1995.

Donald J. Sullivan, Cheyenne, for appellants Michael.

Joseph B. Meyer, Atty. Gen.; Richard Dixon, Sr. Asst. Atty. Gen., Cheyenne, for appellant Wyoming Atty. Gen.

James A. Eddington of Jones, Eddington & Weaver, Torrington, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

THOMAS, Justice.

The only issue in this case is the constitutionality of Wyo.Stat. § 20–7–101 (1994), which provides for an original action by a grandparent to establish reasonable visitation rights to a minor grandchild. Susan Kay Michael and Chris Michael (the Michaels) instituted such an action against Dean B. Hertzler (Hertzler) who was the custodian of the grandchildren. They sought to establish the right of visitation with grandchildren who had been adopted by Hertzler and the Michaels' daughter. Hertzler at-

tacked the constitutionality of the statute, and the trial court ruled the statute "is unconstitutional under the due process requirements of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 6 of the Wyoming Constitution." We hold parental rights are regarded as fundamental rights in Wyoming; the constitutionality of the statute is to be tested under the strict scrutiny standard; the State of Wyoming (State) does have a compelling interest which justifies the statute; and the statute is constitutional. We reverse and remand this case for further proceedings in accordance with this opinion.

The Michaels, in their Brief of Appellants, set forth the following issue:

The sole issue on appeal is whether W.S. 20–7–101(a) violates the due process requirements of the United States Constitution and the Wyoming State Constitution.

In its Brief of the State of Wyoming as Appellant, the State articulates these issues:

I. Does W.S. 1–20–107 [sic] work to create substantive rights in grandparents which then impinge upon the rights of parents to raise their children?

II. Who will serve to protect the rights of children when unfettered exercise of parental rights impinge upon the best interest of children?

III. Does collapse of the nuclear family through death or judicial intervention constitute harm to the child sufficient to warrant invocation of the state's *parens patriæ* powers of protection?

In the Brief of Appellee, filed by Hertzler, the stated issue is:

1. Does W.S. § 20–7–101 violate the Due Process Clause of the United States Constitution and the State of Wyoming Constitution?

The Michaels have a daughter, Pam, who is the natural daughter of Mrs. Michael and the stepdaughter of Mr. Michael. During their marriage, Pam and Hertzler adopted a boy, born February 22, 1986, and a girl, born June 24, 1990. At the time of the respective adoptions, each child was approximately six months old. In 1991, Pam was divorced from Hertzler and had primary custody of the children. During that situation, the Michaels enjoyed ample visitation with the grandchildren. Subsequently, Hertzler was made the primary custodian of the children by mutual agreement with Pam. After the change of custody and following Hertzler's remarriage, the relationship between the Michaels and Hertzler deteriorated to the point Hertzler refused to allow the two children to visit the grandparents.

The Michaels then filed an action seeking to have their rights declared under WYO. STAT. § 20–7–101, which provides:

(a) A grandparent may bring an original action against any person having custody of the grandparent's minor grandchild to establish reasonable visitation rights to the child if:

(i) The grandparent's child who is the parent of the minor grandchild has died or has divorced the minor grandchild's other parent and the person having custody of the minor grandchild has refused reasonable visitation rights to the grandparent; or

(ii) An unmarried minor grandchild has resided with the grandparent for a period in excess of six (6) consecutive months before being returned to the custody of the minor grandchild's parents and the parents have refused reasonable visitation rights to the grandparent.

(b) In any action or proceeding under subsection (a) of this section, the court may grant reasonable visitation rights to the grandparent of a child if the court finds, after a hearing, that visitation would be in the best interest of the child and that the rights of the child's parents are not substantially impaired.

(c) No action to establish visitation rights may be brought by a grandparent under subsection (a) of this section if the minor grandchild has been adopted and neither adopting parent is a natural parent of the child.

(d) In any action or proceeding in which visitation rights have been granted to a grandparent under this section, the court may for good cause upon petition of the

person having custody or who is the guardian of the child, revoke or amend the visitation rights granted to the grandparent. Hertzler asserted the unconstitutionality of this statute in defending the action.

After a hearing, the trial court ruled that Wyo.Stat. § 20–7–101(c) provided grandparents of adopted grandchildren, like the Michaels, standing to petition the court for grandparental visitation rights. The trial court ruled, however, that "W.S. § 20–7–101(a) is unconstitutional under the due process requirements of the Fifth and Fourteenth Amendments to the United States Constitution because, without a preliminary finding of harm to the children, or unfitness of the parent, the State does not have a compelling interest in ordering visitation." This ruling in the Order on Declaratory Judgment was supported by a twelve-page opinion letter in which the trial court reasoned primarily by analogy. The Michaels and the State have appealed from that order and decision.

As a threshold question, we address the contention of the Michaels that Wyo.Stat. § 20–7–101 enjoys a presumption of constitutionality which requires Hertzler to assume the burden of demonstrating it is unconstitutional. Recently, we addressed the burden of proof in cases involving constitutional challenges. We said that, normally:

> [O]ne who alleges unconstitutionality bears a heavy burden and must clearly and exactly show the unconstitutionality beyond any reasonable doubt. However, that rule does not apply where a citizen's fundamental constitutional right, such as free speech, is involved. The strong presumptions in favor of constitutionality are inverted, the burden then is on the governmental entity to justify the validity of the ordinance, and this Court has a duty to declare legislative enactments invalid if they transgress that constitutional provision. The rule we apply under the circumstances of this case is:
>
>> Where rights, privileges, and immunities of the citizen are involved, the usual strong presumption in favor of constitutionality does not apply, and this rule is applicable to First Amendment rights.

This is true in situations involving the right of freedom of expression or thought, or of speech, or association, or of the press, or of religion. Under some authority, the usual presumption in favor of constitutionality is merely weaker where the statute arguably inhibits fundamental rights.

*Miller v. City of Laramie,* 880 P.2d 594, 597 (Wyo.1994) (citations omitted).

The concept articulated in *Miller* places the burden of proof on the State and the Michaels as the parties asserting the constitutionality of the statute.

We next turn to the standard under which the constitutionality of the statute is to be analyzed. If a statute reaches ordinary interests in economic and social welfare, the determination to be made is whether the statute is rationally related to a legitimate state object. If, on the other hand, the statute reaches a fundamental interest, the court is to employ the test of strict scrutiny in making its determination as to whether the enactment is essential to achieve a compelling state interest. *White v. State,* 784 P.2d 1313 (Wyo.1989).

The common law rule was that grandparents had no right to visitation of their grandchildren if it was forbidden by the parents. *Matter of Adoption of RDS,* 787 P.2d 968 (Wyo.1990). The rule of common law deferred to the right of the parents to make decisions regarding their children's associations, and it recognized government is not equipped nor intended to dictate social interaction among families. In 1977, our legislature adopted Wyo.Stat. § 20–2–113(c), which permitted a petition by a grandparent for visitation in a divorce or separation proceeding upon a showing that the visitation would be in the best interest of the child. Our construction of that statute has resulted in a rule that the present and future welfare of the children is of paramount consideration. *Nation v. Nation,* 715 P.2d 198 (Wyo.1986). It is also clear that Wyo.Stat. § 20–2–113(c) does not afford a right of visitation, but simply confers standing to seek a hearing. *Matter of Adoption of RDS.* This appears to be consistent with other grandparental visita-

tion statutes that are said not to presume to create substantive rights. Doris Jonas Freed and Timothy B. Walker, *Family Law in the Fifty States: An Overview*, 24 Fam. L.Q. 309, 372–73, 388–89 (1991).

In 1991, the legislature created a proceeding separate from a divorce or separation proceeding in which grandparents could seek rights of visitation. The predecessor of Wyo. Stat. § 20–7–101 was adopted, causing Wyoming to become one of fifty states adopting such a statute. *See* Appendix A attached to this opinion. We note the statute in Wyoming specifically provides that "the court may grant reasonable visitation rights to the grandparent of a child if the court finds, after a hearing, that visitation would be in the best interest of the child and that the rights of the child's parents are not substantially impaired." Wyo.Stat. § 20–7–101(b).

Hertzler contends he has a constitutionally recognized fundamental right to raise his children as he chooses, and no compelling state interest can be identified to justify this statute when the test of strict scrutiny is applied. The Michaels argue this statute is constitutional under either a rational relationship test or the strict scrutiny test because it is a permissible expression of the legitimate interest of the State in the well-being of children. The argument of the State seeks to justify the statute on the premise of the best interests of a child. In this regard, the State posits its interest under the doctrine of *parens patriæ* and argues it appropriately can initiate a statute to provide for visitation limited to the situation in which the family unit has been disrupted by death or separation of the parents and is sufficiently narrowly drawn.

■ We hold the strict scrutiny test must be applied in this instance. The right to associate with one's family is a fundamental constitutional right. *DS v. Dep't of Pub. Assistance and Social Services*, 607 P.2d 911, 918 (1980). In *State in Interest of C*, 638 P.2d 165, 173 (Wyo.1981), we said:

> "Strict scrutiny" is the standard applied when it becomes necessary to balance a fundamental right against a compelling state interest. It requires the establishment of the compelling state interest and the showing that the method of achieving such is the least intrusive of those methods by which such can be accomplished. *See DS v. Department of Public Assistance and Social Services*, supra; *State ex rel. McDonald v. Whatcom County District Court*, 19 Wash.App. 429, 575 P.2d 1094 (1978), aff'd 92 Wash.2d 35, 593 P.2d 546 (1979); *Meloon v. Helgemoe*, 436 F.Supp. 528 (D.C.N.H.1977), aff'd 564 F.2d 602 [1st Cir.], cert. denied 436 U.S. 950, 98 S.Ct. 2858, 56 L.Ed.2d 793; *Duranceau v. City of Tacoma*, 27 Wash.App. 777, 620 P.2d 533 (1980); *Alevy v. Downstate Medical Center*, 39 N.Y.2d 326, 384 N.Y.S.2d 82, 348 N.E.2d 537 (1976); *Constructors Association of Western Pennsylvania v. Kreps*, 441 F.Supp. 936 (D.C.Pa.1977), aff'd. 573 F.2d 811 [3d Cir.] (1978).

Our rule is consistent with the proposition that a parent enjoys a fundamental right to raise his children. The Supreme Court of the United States articulates the proposition that, "[i]t is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply or hinder." *Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645, *reh'g denied*, 321 U.S. 804, 64 S.Ct. 784, 88 L.Ed. 1090 (1944).

Precedent teaches that the fundamental right asserted by Hertzler has been categorized as a liberty interest protected by the Fifth and Fourteenth Amendments to the Constitution of the United States, and extended to the states by the phrase in the Fourteenth Amendment, "nor shall any State deprive any person of life, liberty or property, without due process of law * * *." *E.g., Carey v. Population Services Int'l*, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Prince; Pierce v. Soc'y of the Sisters of the Holy Names of Jesus and Mary*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). The same rule is found in Wyo. Const. art. 1, § 6, which provides, "[n]o person shall be deprived of life, liberty or property without due process of law." A statute that infringes upon the con-

stitutional right to due process will be stricken. *Holm v. State*, 404 P.2d 740 (Wyo.1965).

█ The crux of Hertzler's position with respect to WYO.STAT. § 20–7–101 is that it infringes upon his fundamental right to liberty in the rearing of his children without undue governmental interference. The claim of due process involves a requirement that the party claiming the constitutional protection demonstrate a protected interest in life, liberty or property, and the interest has been infringed in an impermissible way. *Ward v. Bd. of Trustees of Goshen County Sch. Dist. No. 1*, 865 P.2d 618 (Wyo.1993). The substantive due process right will protect against arbitrary governmental action, even though the decision to act is made through procedures that are in themselves constitutionally adequate. *Miller v. Campbell County, Wyoming*, 722 F.Supp. 687 (D.Wyo.1989), *aff'd.* 945 F.2d 348 (10th Cir.1991), *cert. denied*, 502 U.S. 1096, 112 S.Ct. 1174, 117 L.Ed.2d 419 (1992).

In fleshing out the concept of a liberty interest, the Supreme Court of the United States has said a liberty interest "denotes not merely freedom from bodily restraint but also the right of any individual to * * * establish a home and bring up children." *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). In a local context, the United States district court has ruled that liberty under the due process clause is broader than freedom from bodily restraint. *Moore v. Wyoming Medical Center*, 825 F.Supp. 1531 (D.Wyo.1993). This right of privacy is inherent in the concept of ordered liberty according to one author. Michael J. Minerva, Jr., *Grandparent Visitation: The Parental Privacy Right to Raise Their "Bundle of Joy,"* 18 FLA.ST.U.L.REV. 533, 540–41 (1991). The right supports parents in making decisions regarding the care and company of their children with minimal government intervention, and we hold that Hertzler has presented a protected liberty interest in the context of his right of privacy.

█ This reasoning invokes the concept of strict scrutiny, which demands identification of a compelling state interest. The compelling state interest then must be balanced against the fundamental right, and the method of protecting that compelling state interest must be the least intrusive by which that interest can be accomplished. *State in the Interest of C*, 638 P.2d 165.

█ While the interest of the parent is a fundamental liberty interest, it is not without its limitations. For example, in applying the concept of due process under the federal constitution, the Supreme Court has weighed the right of parents against the right of a minor to seek an abortion. It held the pregnant minor was entitled to a proceeding to demonstrate either that she was mature and well enough informed to make a decision about abortion in consultation with her physician, independently of her parents' wishes or, if she was not capable of the independent decision, she could show the abortion would be in her best interest. *Bellotti v. Baird*, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797, *reh'g denied*, 444 U.S. 887, 100 S.Ct. 185, 62 L.Ed.2d 121 (1979). Similarly, a child was held to be entitled to a hearing prior to being admitted to a mental institution despite the determination of the parents that the child should be admitted. *Parham v. J.R.*, 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979). *Prince* upheld a statute protecting children against the crippling effects of child employment, especially in public places, and the possible harm arising from other activities subject to all the diverse influences of the street.

In considering the interest of the State, we find support in persuasive authority from other jurisdictions. In *Lehrer v. Davis*, 214 Conn. 232, 571 A.2d 691 (1990), the court was presented with a reserved question of law concerning the constitutionality of that state's visitation statute under the due process clause of the Fourteenth Amendment. The court declined to rule on the constitutionality of the visitation statute because of an insufficient factual record. It said, however, "[p]sychiatrists and psychologists * * * unanimously counsel that children should maintain and retain meaningful relationships and that to deny them continuing contacts is a deprivation * * *. Stability, continuity and opportunity, of and for meaningful asso-

ciations are said to build a healthy psyche." *Lehrer,* 571 A.2d at 695.

In Florida, a court of appeals, concluded the statute was facially valid because the state had a compelling interest in the welfare of children. *Sketo v. Brown,* 559 So.2d 381 (Fla.Dist.Ct.App.1990). The court did not specify the level of scrutiny, although a compelling interest suggests strict scrutiny, nor did it weigh the interest of the parties or the children. It did hold that the visitation awarded was excessive and reversed that decision as an abuse of discretion.

Indiana has ruled the interest of the state is found in protecting the best interest of the child. It held that the General Assembly had employed a means reasonably related to a legitimate end of state government, and an amendment to the grandparent visitation statute did not infringe upon the constitutional right of parents to raise their families as they see fit. *Bailey v. Menzie,* 542 N.E.2d 1015 (Ind.Ct.App.1989).

In Kentucky, the supreme court considered the constitutionality of that state's grandparent visitation statute and balanced the parents' liberty interest, under the Fourteenth Amendment to rear children without undue government interference, against the interests of the state to endeavor to strengthen familial bonds. *King v. King,* 828 S.W.2d 630 (Ky.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 378, 121 L.Ed.2d 289 (1992). The Kentucky court invoked the rational relation test of lesser scrutiny in finding its statute to be constitutional and said:

> If a grandparent is physically, mentally and morally fit, then a grandchild will ordinarily benefit from contact with the grandparent. That grandparents and grandchildren normally have a special bond cannot be denied. Each benefits from contact with the other. The child can learn respect, a sense of responsibility and love. The grandparent can be invigorated by exposure to youth, can gain an insight into our changing society, and can avoid the loneliness which is so often a part of an aging parent's life. These considerations by the state do not go too far in intruding into the fundamental rights of the parents. Thus, we find that KRS 405.–021 [Ken-

tucky's grandparent visitation statute] is constitutional.

*King,* 828 S.W.2d at 632.

The New York Court of Appeals said, in a similar vein:

> The amended statute, as several courts have recognized, rests on the humanitarian concern that " '[v]isits with a grandparent are often a precious part of a child's experience and there are benefits which devolve upon the grandchild * * * which he cannot derive from any other relationship.' " (*Matter of Ehrlich v. Ressner,* 55 A.D.2d 953, 391 N.Y.S.2d 152, quoting *Mimkon v. Ford,* 66 N.J. 426, 437, 332 A.2d 199, 204; *see, Matter of Vacula v. Blume,* 53 A.D.2d 633, 384 N.Y.S.2d 208).

*Emanuel S. v. Joseph E.,* 78 N.Y.2d 178, 573 N.Y.S.2d 36, 38, 577 N.E.2d 27, 29 (1991).

Following the lead of the courts of our sister jurisdictions, we perceive a compelling state interest in the State of Wyoming which justifies the grandparent visitation statute, perhaps more so. The statute specifically adopts the best interest of the child as a standard which we perceive as representing a compelling state interest in the state's role as *parens patriæ.* In *State in Interest of C,* we held that protecting the health, safety, and welfare for the best interest of the child is a compelling state interest.

We then reach the question of weighing the compelling interest of the State in protecting the best interest of the child against Hertzler's fundamental liberty right. We previously have noted Hertzler's right is not unfettered. A state derives power to adopt regulations for the well-being of its citizens from its police power. The police power is the inherent plenary power possessed by the state not only to prevent its citizens from harming one another, but to promote all aspects of public welfare. *See Development in the Law—The Constitution and the Family,* 93 HARV.L.REV. 1156, 1198–99 (1980).

Society clearly condones intrusions upon parental rights which are justified in the face of abuse or neglect. The best interest of the child is the standard applied in connection with WYO.STAT. §§ 14–3–201 to –215 (1994), which permits the state to intervene to pro-

tect children from abuse or neglect jeopardizing their health or welfare and to seek stabilization of the home environment. Protective custody on a temporary basis is provided for abused or neglected children by WYO.STAT. § 14–3–208. Illicit sexual relations with children and immodest, immoral, or indecent liberties with children are prohibited under WYO.STAT. §§ 14–3–104 and –105 (1994). In the statutes relating to juvenile court, the recognition of an authority in the state superior to that of the parents is present. WYO.STAT. §§ 14–6–201 to –243 (1994). In appropriate situations, the state has the power to intervene and terminate parental rights. WYO.STAT. §§ 14–2–308 to –319 (1994).

In this capacity as *parens patriæ*, the state can supervise the welfare of children and promote their best interest in a way which affects the rights of parents. The safety of children is protected by requiring parents to restrain them in automobile car seats under WYO.STAT. § 31–5–1303 (1994). They are required to send their children of school age to be educated by WYO.STAT. § 21–4–102 (1992). These simply are examples of the manifestation of the state interest in protecting children.

In this court, the right of the state to intervene in the best interest of the child under certain circumstances has been recognized. We held a paternal grandmother could be granted temporary custody of a grandchild, in the best interest of the child, upon a petition based on the custodial father's neglect of the child. *In the Interest of MKM,* 792 P.2d 1369 (Wyo.1990). We have held the Department of Family Services could continue to have temporary legal custody of the child following the showing of physical abuse and neglect by the custodial father. *In the Interest of MFB,* 860 P.2d 1140 (Wyo.1993). Similar results occur in *Matter of Adoption of JLP,* 774 P.2d 624 (Wyo.1989); *Matter of Parental Rights of GP,* 679 P.2d 976 (Wyo.1984); and *Matter of SKJ,* 673 P.2d 640 (Wyo.1983).

We do not find much discussion in the authorities in this area in the rights of grandchildren and grandparents to associate. The Supreme Court of the United States clearly has recognized that children are "persons" within the meaning of the Bill of Rights. There the Court said:

> Students in school as well as out of school are "persons" under our Constitution. They are possessed of fundamental rights which the State must respect, just as they themselves must respect their obligations to the State.

*Tinker v. Des Moines Indep. Community Sch. Dist.,* 393 U.S. 503, 511, 89 S.Ct. 733, 739, 21 L.Ed.2d 731 (1969).

In our cases, the right to associate with one's family is identified as a fundamental liberty under WYO. CONST. art. 1, §§ 2, 6, 7, and 36. *Matter of Parental Rights of GP,* 679 P.2d 976; *DS,* 607 P.2d 911. We perceive this interest to be an equivalent fundamental right to that asserted by Hertzler. It is available to children and grandparents, as well as parents, and the state has an equal duty to protect the fundamental rights of the grandparents and the children.

In *Goff v. Goff,* 844 P.2d 1087, 1091 (Wyo. 1993), while the issue of constitutionality was not advanced, we said:

> Scholarly study and research has confirmed this position articulated by the New Jersey Supreme Court [in *Mimkon v. Ford,* 66 N.J. 426, 332 A.2d 199, 204–05 (1975) grandparents and grandchildren are linked by heredity, special relationships arise, visits with a grandparent are often a precious part of a child's experience producing benefits no other relationship can give] and has demonstrated that children who miss out on the bonding process with grandparents are deprived of a valuable experience. One author has set forth the significant factors in this way.
>
> > Social scientists have identified at least four "symbolic" roles that help explain the ways in which grandparents influence their families. The "being there" role requires nothing more than a grandparent's presence and may help younger generation members in two ways. First, this presence "mitigates against the obtrusive events of the outside world and disruptive events of role transitions * * * [and] serves to main-

tain the identity of the family." In times of transition, such as after the birth of a sibling or during divorce, a grandparent's presence may exert a calming influence on grandchildren. Second, just by being there, grandparents provide an important stabilizing influence particularly important for children born of early teenage mothers.

The second symbolic role played by grandparents is that of "family watchdog." In this role, the grandparent is alert for signs of abuse or neglect that might indicate that the family will need active care and protection. Third, an "arbitrating" role may be assumed when grandparents actively negotiate between parents and children concerning values and behaviors that may be more central, in the long run, to family continuity and individual enhancement than those that the parents' authority status allow to be expressed. Such negotiation may also occur when grandparents downplay volatile or disruptive differences between parents and children. The fourth important symbolic role for grandparents is as "interpreters" of the family's history. Grandparents may help grandchildren build connections between the family's past, present, and future, which help children form a firmer sense of identity.

Patricia S. Fernandez, *Grandparent Access: A Model Statute,* 6 Yale L. & Pol'y Rev. 109, 109–110 (1988) (footnotes omitted) (citing V. BENGSTON, DIVERSITY AND SYMBOLS IN GRANDPARENTAL ROLES, IN GRANDPARENTHOOD 21–24 (V. Bengston & J. Robertson eds. 1985)).

We conclude that, in addition to the compelling state interest attaching to the best interest of the children, the compelling state interest exists in maintaining the right of association of grandparents and grandchildren.

The relative interests of the parties, parents, grandparents, and children must be balanced and procedural protections or safeguards must be present as the situation demands. *Lentsch v. Marshall,* 741 F.2d 301 (10th Cir.1984). We are satisfied WYO.STAT. § 20–7–101 contains the appropriate safeguards. While the grandparent may bring the action to seek visitation, it cannot be granted until a hearing is conducted to determine if the visitation is in the best interest of the child and the rights of the child's parents are not substantially impaired. The record is silent in this regard, but we can think of no situation in which it might be more appropriate for the trial court to appoint a guardian *ad litem* to advance the interests of the children. See WYO.R.CIV.P. 17(c). Furthermore, the statute provides for an additional procedural safeguard in subsection (d) in the form of continuing jurisdiction in the court.

We are satisfied this statute is sufficiently narrowly drawn. Only a grandparent is afforded the opportunity to file for visitation. The circumstances are limited to an instance in which the grandparent's child, who is the parent, has died or has divorced the other parent, and the person having custody has refused reasonable visitation; or an instance in which an unmarried minor grandchild has resided with the grandparent for more than six months before being returned to the custody of the grandchild's parents, and those parents have refused reasonable visitation rights. We understand weighing of the fundamental interests of the parents, grandparents, and children is not an easy task. It will be a difficult decision in many instances, but the standard incorporated in the statute, the best interest of the child, is well recognized, and the court clearly can control those rights so the rights of the parents will not be substantially impaired.

We affirm the ruling of the trial court that the Michaels, as parents of a parent who has adopted children, have standing to petition for grandparent visitation under WYO.STAT. § 20–7–101(c). We hold the statute is constitutional, and we reverse the trial court's ruling that the grandparent visitation is unconstitutional. The case is reversed and remanded for further proceedings in accordance with this opinion.

### APPENDIX A

Alabama Code § 30–3–4 (Michie 1989)

Alaska Statutes § 25.24.150 (Michie 1991)

Arizona Revised Statutes Annotated § 25–337.01 (West 1993 Supp.)

 

Arkansas Code Annotated § 9–13–103 (Michie 1993)

California Family Code §§ 3102–3104 (West 1994)

Colorado Revised Statutes Annotated §§ 19–1–117—19–1–117.7 (Bradford 1994 Supp.)

Connecticut General Statutes Annotated § 46b–59 (State 1986)

Delaware Code Annotated, Title 13, §§ 721–728 (Michie 1993)

Florida Statutes Annotated § 752.001–752.01 (West 1994 Supp.)

Code of Georgia Annotated § 74–112 (19–7–3) (Harrison 1994 Supp.)

Hawaii Revised Statutes Annotated § 571–46(7) (Harrison 1992 Supp.)

Idaho Code § 32–719 (Michie 1994 Supp.)

Illinois Annotated Statutes, Ch. 750, ¶ 5/607(b), Ch. 755 ¶ 5/11–7.1 (Smith–Hurd 1992)

Indiana Code Annotated §§ 31–1–11.7–2 to 31–7–11.7–8 (Michie 1994 Supp.)

Iowa Code Annotated § 598.35 (West 1994 Supp.)

Kansas Statutes Annotated § 38–129 (State 1994)

Kentucky Revised Statutes Annotated § 405.021 (Michie/Bobbs–Merrill 1984)

Louisiana Revised Statutes Annotated § 9:344 (West 1994)

Maine Revised Statutes Annotated, Title 19, § 1003 (West 1993 Supp.)

Maryland Family Law Code Annotated § 9–102 (Michie 1993 Supp.)

Massachusetts Annotated Laws, Ch. 119 § 39D (Law.Coop.Supp.1994)

Michigan Statutes Annotated § 25.312(7b) (Callaghan 1994 Supp.)

Minnesota Statutes Annotated § 257.022 (West 1994 Supp.)

Mississippi Code 1972 Annotated §§ 93–16–1 to 93–16–7 (Law.Coop.1993 Supp.)

Annotated Missouri Statutes § 452.402 (Vernon Supp.1993)

Montana Code Annotated §§ 40–4–217, 40–9–101 to 40–9–102 (State 1993)

Nebraska Revised Statutes §§ 43–1801 to 43–1803 (State 1988)

Nevada Revised Statutes Annotated §§ 125A.330 to 125A.340, 432.B560(1)(c) (Michie 1993)

New Hampshire Revised Statutes Annotated § 458:17–d (Butterworth 1993 Supp.)

New Jersey Statutes Annotated § 9:2–7.1 (West 1994 Supp.)

New Mexico Statutes Annotated §§ 40–9–1 to 40–9–4 (Michie 1994 Replacement Pamphlet)

New York Domestic Relations Law §§ 72, 240 (West {McKinney} 1994 Supp.)

North Carolina General Statutes §§ 50–13.2(b1), 50–13.2A, 50–13.5j (Michie 1989)

North Dakota Century Code § 14–09–05.1 (Michie 1993 Supp.)

Ohio Revised Code Annotated §§ 3109.051, 3109.11, 3109.12 (Banks–Baldwin 1992)

Oklahoma Statutes Annotated, Title 10, §§ 5, 60.16 (West 1994 Supp.)

Oregon Revised Statutes §§ 109.121, 109.123 (State 1993)

23 Pennsylvania Consolidated Statutes Annotated §§ 5311–5314 (West–Bisel 1991)

Rhode Island General Laws §§ 15–5–24.1—15.5–24.3 (Michie 1993)

South Carolina Code Annotated § 20–7–420(33) (Law.Coop.1985)

South Dakota Codified Laws Annotated §§ 25–4–52, 25–4–54 (Michie 1992)

Tennessee Code Annotated § 36–6–301 (Michie 1991)

Texas Family Code Annotated §§ 14.03(e)—14.03(f) (West 1994 Supp.)

Utah Code Annotated § 30–5–1, 30–5–2 (Michie 1993 Supp.)

Vermont Statutes Annotated, Tit. 15, §§ 1011–1016 (Equity 1989)

Virginia Code Annotated §§ 20–1024.1—20–124.4 (Michie 1994 Supp.)

Washington Revised Code Annotated § 26.09.240 (West 1994 Supp.)

West Virginia Code §§ 48–2B–1 to 48–2B–9 (Michie 1994 Supp.)

Wisconsin Statutes Annotated §§ 767.245, 880.155 (West 1993, 1991)

Wyoming Statutes §§ 20–2–113(c) and 20–7–101 (Michie 1994 Supp.)